ST. PAUL ELECTRICAL WORKERS WELFARE FUND, a Trust, Electrical Workers Health and Welfare Fund, a Trust, Twin City Pipe Trades Welfare Fund a Trust, Sheet Metal Workers 547 Welfare Plan, a Trust, Minnesota Wisconsin Health and Welfare Plan, a Trust, St. Paul Chapter, National Electrical Contractors Association, a Minnesota Not For Profit Corporation, Weber Electric, Inc., a Minnesota Corporation, Thomas R. Frantes and Frank Horak, in their own behalf as Trustees of Twin City Pipe Trades Welfare Fund, and Clyde W. Millerberud and John J. Galles, Plaintiffs,

v.

Michael D. MARKMAN, Commissioner of the Insurance Division of the Department of Commerce of the State of Minnesota; Minnesota Comprehensive Health Association, a Minnesota corporation, and Clyde E. Allen, Commissioner of Revenue for the State of Minnesota, Defendants.

Civ. No. 3–78–269.

United States District Court,
D. Minnesota,
Third Division.

May 21, 1980.

---

**932**

William K. Ecklund and James M. Dawson, Felhaber, Larson, Fenlon & Vogt, P.A., and William M. Bradt, Hansen, Dordell & Bradt, St. Paul, Minn., for plaintiffs.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Chief Deputy Atty. Gen., and Karen G. Schanfield, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

Plaintiffs move for summary judgment and seek a declaratory judgment and a permanent injunction arguing, *inter alia*, that the Minnesota Comprehensive Health Insurance Act, Minn.Stat. § 62E.01 *et seq.*, and Minn.Stat. §§ 62A.16, 62A.17, as applied to trustees of employee welfare benefit plans and employers who establish such plans, have been pre-empted by the Employee Retirement Income Security Act. (ERISA), 29 U.S.C. § 1001 *et seq.* In addition, plaintiffs argue that the Act is preempted by the National Labor Relations Act and that the Act violates the privilege and immunities and the contract clauses of the United States Constitution. This case was com-

bined with *Insurer's Action Council, Inc., et al. v. Markham, et al.*, D.C., —— F.Supp. ——, Civ. 3–76–440, as a companion case. The parties submitted a stipulation of facts on the ERISA pre-emption issue. Arguments were heard on April 25 and May 5, 1980.

Based upon the stipulation of facts, briefs, arguments and the record, the court finds that the Minnesota Comprehensive Health Care Act, to the extent set forth herein, is pre-empted by section 514(b)(2)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1144(b)(2)(B). Accordingly defendants are permanently enjoined from enforcing the provisions of the Act against the employer or trust plaintiffs.

*ERISA Pre-emption*

This case presents, once again, the complex issue concerning the scope of section 514 of the Employee Retirement Income Security Act. 29 U.S.C. § 1144(a).

Plaintiffs object to the attempt by the state of Minnesota to regulate the employee welfare benefit plans or employers who fund those plans. Plaintiffs are beneficiaries and trustees of an employee welfare trust, an association of employers organized for purposes of collective bargaining and a member of that Association.

Minn.Stat. § 62E.10, subd. 1 requires all "insurers, self insurers, fraternals and health maintenance organizations" to join the association. The association is a tax exempt association, *Id.*, created for purposes of providing reinsurance to insurers, Minn.Stat. §§ 62E.04, subd. 6, 62E.10, subd. 7, and to underwrite and administer a state plan which is designed to make available adequate insurance coverage to the high risk or uninsurable. Minn.Stat. §§ 62E.08, 62E.10 and 62E.11. " 'Self insurer,' means an *employer* or an *employee welfare benefit fund or plan* which directly or indirectly provides a plan of health coverage to its employees and administers the plan of health coverage itself or through an insurer, trust or agent . . ." Minn.Stat. § 62E.02, subd. 21 (emphasis added). Failure to maintain membership in the associa-

tion can result in termination of the member's right to do business in the state. Minn.Stat. § 62E.10, subd. 3.

The self-insurers are subject to certain annual reporting requirements which include, ". . . the self insurer's total cost of self insurance and other information the commissioner may by rule require relating to the self insurer's plan of health coverage." Minn.Stat. § 62E.035. In addition self-insurers must include in their plans of insurance, a continuation provision permitting resident employee insureds to continue coverage for up to six months after termination of employment, Minn.Stat. §§ 62E.16, 62A.16 and 62A.17, and a conversion privilege, permitting insureds under a group policy to convert the group coverage to an individual insurance policy.

The Act imposes additional requirements on employers. The Act requires that employers who make available health care coverage to their employees provide a number 2 qualified plan. Minn.Stat. § 62E.03, subd. 1; and a dual option. Minn.Stat. § 62E.17, subd. 1. The qualified plan provision sets forth specific minimum coverage requirements, which include major medical coverage. Minn.Stat. §§ 62E.06, subd. 1(a), subd. 2; the plan must be submitted to the Insurance Commission for certification. Minn. Stat. § 62E.05. Failure to comply can result in loss of tax benefits. Minn.Stat. § 62E.03, subd. 2. The dual option provision requires certain employers to offer the qualified plan coverage through either an accident and health insurance contract or a health maintenance organization contract. Minn.Stat. § 62E.17, subd. 1.

The employee benefit plans here in question provide health and welfare benefits to participants, are established pursuant to a written agreement between the union and an employer or group of employers and are administered by a Board comprised of an equal number of representatives from labor and management. The trustees of the plans are authorized to provide the benefits through the purchase of insurance or as self-insurers. With one exception, however, all plans act as self-insurers for purposes of all benefits. The Sheetmetal Workers 547 Welfare Plan contracts with an insurer to underwrite insurance over a stop loss amount but is self insured below that amount.

The plans are employee welfare benefit plans and are subject to the reporting and fiduciary responsibility provisions of ERISA. None of the plans meet the qualified plan, dual option or conversion requirements of Minn.Stat. §§ 62E.01 *et seq.*; 62A.16 and 62A.17. Each of the employer and trust plaintiffs meet the definition of "self-insurer," Minn.Stat. § 62E.02, subd. 21, and are treated as self-insurers by defendants.

It is therefore clear that the Minnesota Comprehensive Health Insurance Act subjects employee welfare benefit plans and employers who fund those plans to substantive and reporting requirement provisions of the state insurance laws. The issue here is whether the state insurance law provisions, as applied to plaintiffs, are pre-empted by section 514 of ERISA.

The scope of section 514 is set forth in three sections. Section 514(a) creates a broad pre-emption covering "any and all state laws" "relate[d] to any employee benefit plan." 29 U.S.C. § 1144(a). Section 514(b)(2)(A) creates an equally broad exemption to the pre-emption provision covering "any law of any State which regulates insurance, banking or securities." Subparagraph (B) of that subdivision limits the scope of the (2)(A) exemption, by prohibiting states from "deeming" employee benefit plans or trusts to be insurance companies for purposes of subjecting those plans to state regulations. There is no doubt that the provisions here in question "relate to" employee benefit plans, and that they are part of an insurance law. This case turns on the scope of the "deemer" provision of section 514(b)(2)(B).

Section 514(b)(2)(B) provides *inter alia*, Neither an employee benefit plan . ., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance

. . . for purposes of any law of any State purporting to regulate insurance companies . . . .

The provisions here in question fall squarely within the prohibitions of Section 514(b)(2)(B) and are therefore not entitled to the insurance law exemption provisions of Section 514(b)(2)(A). Minnesota statutes section 62E.02, subd. 21 specifically defines employee welfare benefit funds or plans as self-insurers, and thereby subjects the plan to additional reporting, § 62E.035, and membership § 62E.10, requirements. The Act has thus subjected the benefit plans to regulations addressed to traditional insurers and therefore falls outside the insurance law savings clause. *Wadsworth v. Whaland*, 562 F.2d 70, 76 (1st Cir. 1977) *cert. denied* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *Hewlett-Packard Company v. Baines*, 425 F.Supp. 1294 (N.D.Cal.) *aff'd* 9 Cir., 571 F.2d 502 *cert. denied* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978).

Defendants argue that the pre-emption provision of ERISA applies only to state laws regulating areas covered by ERISA and that the Minnesota Act does not do so. Though that argument may well apply where the regulation of pension plans is indirect, *Wadsworth, supra; Insurer's Action Council v. Heaton*, 423 F.Supp. 921, 926 (D.Minn.1976), the argument cannot prevail where, as here, the state attempts to directly regulate the pension plans by "deeming" the plans to be self-insurers. *Wadsworth, supra* at 76 ("in the event [that] they are [insurers] we would have no difficulty finding explicit pre emption by ERISA notwithstanding the saving clause.")

It is no answer to argue that the Act is not pre-empted because it subjects the employee benefit plans to some insurance regulations rather than the entire scheme of insurance laws, and that the provisions governing the content of insurance policies are not of a nature requiring uniform national legislation. Section 514(b)(2)(B) prohibits treating employee benefit plans as insurers "for purposes of *any law* of any state purporting to regulate insurance companies, . . . ." (emphasis added), and where

"Congress' command is explicitly stated in the statute's language" pre-emption must be found. *Jones v. Rath Packing Company*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1979) (dictum). The court need not, therefore, consider the degree of conflict, *See Jones, supra*, at 533–43, 97 S.Ct. at 1313–1318, the pervasiveness of the federal statutory scheme, *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), or the need for national uniformity, *Id.* at 639, 93 S.Ct. at 1862, in holding that the provisions of the Minnesota Act have been pre-empted by ERISA.

The court finds no significant distinction between the provisions expressly governing employee benefit plans and those directed at employers. The employer provisions do not apply to all employers but only to those who "provide[s] or make[s] available . . . a plan of health coverage . . . ." Minn.Stat. §§ 62E.03; 62E.17. The statute purports to regulate employers only to the extent that the employers provide welfare benefit plans. The provisions governing the employer, therefore, constitute a direct regulation of the employee benefit plans.

In granting summary judgment the court holds only, that where the state attempts to directly regulate employee benefit plans under the auspices of the insurance laws, that such regulations fall within the express language of section 514(b)(2)(B) and must therefore give way to the federal law. This case does not concern legislation directed solely at insurance companies which may have the effect of regulating the contents of all insurance policies, including those which are part of an employee welfare benefit plan.

To the extent that the provisions of Minn. Stat. § 62E.01, *et seq.* and §§ 62A.16 and 62A.17 purport to directly regulate employee welfare benefit plans, the trust, funds established under such plans, and employers who provide the plans, they are pre-empted by section 514(b)(2)(B). The court need not therefore consider the remaining issues presented. Summary judgment is GRANTED in favor of plaintiffs, defendants are

permanently ENJOINED from enforcing the above provisions to the extent set forth herein.